IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MANDOLA MANAGEMENT, INC. | § | |
| | § | |
| V. | § | CAUSE NO. 1:11-cv-00478-LY |
| | § | |
| PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FRCP 12(B)(1) AND 12(B)(6)**

Mandola Management, Inc. ("MMI"), Plaintiff and Respondent herein, submits this its

Response to Defendant Philadelphia Indemnity Insurance Company's ("PIIC") Motion to

Dismiss.

**BACKGROUND AND EXPLANATION OF THE
UNDERLYING TWO LAWSUITS**

1.      In or about April 2005, Damian and Trina Mandola (the "Mandolas") and Stan

and Lisa Duchman (the "Duchmans") entered into a limited partnership known as DuchMandola,

Ltd. ("DM, Ltd."). (PIIC Fact No. 1[1])  DM, Ltd. owned and operated a winery (the "Winery")

and the Trattoria Lisina Restaurant ("Trattoria") in Driftwood, Texas.  Damian Mandola – as

president of DuchMandola GP, Inc. ("GP, Inc.") – the general partner of DM, Ltd. – managed

the operations of the DM, Ltd., the Winery and Trattoria restaurant.[2]  (PIIC Fact No. 2)

2.      In or about November, 2005, Mandola Management, Inc. ("MMI")[3] and DM, Ltd.

entered into an employee leasing agreement (the "Leasing Agreement") pursuant to which MMI

leased employees to DM, Ltd. to work at the Winery and Trattoria, and DM, Ltd. agreed to

---

[1] "PIIC Fact" refers to the Appendix of Fact and Exhibits that PIIC filed and submitted in conjunction with PIIC's Motion to Dismiss (Doc. 68-1).  MMI accepts and stipulates the facts presented and cited herein.

[2] The Mandolas withdrew from the limited partnership November 2009, leaving the Duchmans as the only limited partners. DM, Ltd. is now known as Duchman, Ltd. (PIIC Fact No. 4)

[3] Mandola Management, Inc. ("MMI") was and is an employee/staff leasing company owned by the Mandolas.  At all relevant times, Damian Mandolas was an officer and director of MMI.  (PIIC Fact No. 5)

indemnify MMI from and against any claims brought against MMI by those leased employees (the "Indemnity"). (PIIC Fact No. 3)

3.      Beginning in November 2008, and continuing through August 2010, Katherine Bounds ("Bounds") – an MMI employee leased to Trattoria - filed and prosecuted a lawsuit (the "Bounds Lawsuit") against MMI, Damian Mandola, Trina Mandola, Stan Duchman and Lisa Duchman, Trattoria Lisina, L.L.C., DM, Ltd. and DuchMandola GP, Inc. and claiming violations of the Texas Commission on Human Rights Act by Damian Mandola (the "Bounds' Claims"). The Bounds Lawsuit settled in mediation 6/10/10 prior to trial. (PIIC Fact No. 8)

4.      On July 22, 2010, MMI and the Mandolas sued DM, Ltd. claiming that DM, Ltd. was obligated pursuant to the Indemnity to reimburse MMI and the Mandolas for the losses and expenses they incurred defending the Bounds Lawsuit.  The Mandolas also sued for common law and statutory indemnity as agents, officers, and directors of DM, Ltd. who had been sued for actions in the course and scope of their responsibilities as officers and directors of DM, Ltd. and its general partner GP, Inc.  That lawsuit was Cause No. C-1-CV-10-006956 in the Travis County Court at Law (the "Travis County Indemnity Suit").  (PIIC Fact No. 14)  On May 9, 2011, the Court entered Final Judgment in the Travis County Indemnity Suit in favor of MMI and the Mandolas and against DM, Ltd. in the amount of $374,538.00.[4] (PIIC Fact No. 21; PIIC exh. 13)

5.      The 4/20/11 settlement between the Mandolas, MMI, and DM, Ltd. included DM, Ltd.'s assignment (the "Assignment" – PIIC exh. 12) to MMI of the DM, Ltd. claims against PIIC for reimbursement of attorney's fees incurred by MMI in the Bounds Lawsuit which DM,

---

[4] MMI and the Mandolas subsequently released the Duchmans and DM, Ltd. from the Travis County Indemnity Suit Final Judgment in consideration for payment in the amount of $347,538 paid 5/20/11 and the assignment of certain DM, Ltd. claims against PIIC. (PIIC Fact Nos. 21 and 24; PIIC exh. 14)

Ltd. was obligated to reimburse MMI pursuant to the Indemnity (the PIIC Claims), that MMI now sues on in this case.

6.     This current suit arises from three different claims and two underlying lawsuits:

a. **Bound's Claims** and lawsuit against the Mandolas/MMI and the Duchmans/DM, Ltd., Cause No. D-1-GN-08-4114 in the Travis County District Court filed 11/13/08 and settled 6/28/10 - the "Bounds Lawsuit";

b. **MMI/Mandolas' claims** and lawsuit against the Duchmans/DM, Ltd. for indemnification of the Bound's claims (Cause No. C-1-CV-10-006956 in the Travis County Court filed 7/22/10 and settled 5/20/11) – the "Travis County Indemnity Suit"; and

c. **Duchman/DM, Ltd.'s** claims against their insurance company PIIC (which the Duchmans did not present to PIIC but instead assigned to MMI, and which MMI prosecutes in this present suit – the "PIIC Claims").

6.     MMI (as assignee of DM, Ltd.) in this case sues for DM, Ltd.'s *Loss* (damages and defense costs) as a result of MMI/the Mandolas' prosecution of the Mandola Indemnity Claims against DM, Ltd (the "PIIC Claims") in the Travis County Indemnity Suit.  MMI also seeks and is entitled to declaratory judgment declaring that:

a. MMI is the assignee of the PIIC Claims;

b. PIIC is liable to MMI (as assignee) for the monies that PIIC owes to DM, Ltd. under the Policies representing: i) DM, Ltd.'s damages and loss in the Travis County Indemnity Suit ($347,538); and ii) PIIC's defense costs in the Travis County Indemnity Suit ($89,512.42); and

c. MMI's claims and relief sought are not barred or released by the 10/31/10 DM, Ltd./PIIC Release or the 2/11/11 MMI Release (see discussion at pp. 6-9 herein).

**PIIC's Motion to Dismiss Arguments**

7.     PIIC submits three arguments in support of its Motion to Dismiss.  MMI submits that PIIC's arguments are without merit and should be denied; or alternatively, that there exist disputed issues of fact which preclude dismissal.

**I. PIIC Argument No. 1:  MMI lacks standing because it has not suffered an**

3

**actionable injury and because the DM, Ltd. Assignment is not valid.**

8.      PIIC argues that the DM, Ltd. Assignment to MMI of the claims for which MMI now sues PIIC is invalid because "*the purpose of the Assignment was to prolong litigation*". PIIC's argument mischaracterizes MMI's claims:  MMI does <u>not</u> seek in this case "*the exact same relief it has already received*".  PIIC is correct that in the Travis County Indemnity Suit, the Mandolas, and MMI sought damages against DM, Ltd. for DM, Ltd.'s breach of the Leasing Agreement.  In this suit against PIIC, however, MMI seeks the money that PIIC was responsible for paying (but did not pay) to DM, Ltd. in conjunction with DM, Ltd.'s defense against MMI and the Mandolas' claims in the Travis County Indemnity Suit (as opposed to the Bound's Lawsuit..

9.      In addition, PIIC's statement that MMI also sued PIIC in the Travis County Indemnity Suit for damages and defense costs incurred as a result of the Bound's Lawsuit is also correct, but MMI is not suing PIIC in this case for <u>MMI's</u> damages and defense costs.  In this case, MMI sues PIIC for <u>DM, Ltd.'s</u> defense and indemnification costs incurred in conjunction with defending MMI and the Mandolas' claims against DM, Ltd. in the Travis County Indemnity Suit (as opposed to the Bound's Lawsuit).

10.      Because the claims and damages for which MMI now sues PIIC in this case are not the same claims, damages, or recovery that the Mandolas and MMI sued DM, Ltd. and PIIC for in the Travis County Indemnity Suit, this litigation is, in fact, "different" from the Travis County Indemnity Suit litigation and does not "prolong" the Travis County Indemnity Suit litigation.

11.     In addition – as PIIC apparently acknowledges – the *Gandy*[5] conditions were not and are not met because: i) PIIC never tendered a defense to DM, Ltd. of the MMI and Mandolas' claims against DM, Ltd. in the Travis County Indemnity Suit; ii) PIIC never accepted coverage of the MMI and Mandolas' claims against DM, Ltd. in the Travis County Indemnity Suit;[6] and iii) PIIC never made any effort to adjudicate coverage of the MMI and Mandolas' claims against DM, Ltd. prior to the adjudication of the Mandolas/MMI's claims in the Travis County Indemnity Suit.[7] DM, Ltd. apparently did not believe that it had coverage for the MMI and Mandolas' claims against DM, Ltd. in the Travis County Indemnity Suit – see PIIC Appendix of Fact Nos. 10 and 17; PIIC exh. 4, document 68-5 p. 5 of 28); *i.e.* DM, Ltd. never sued PIIC to cover, defend, or indemnify DM, Ltd. for the MMI and Mandolas' claims against DM, Ltd. in the Travis County Indemnity Suit. Likewise, PIIC never made any effort to "adjudicate coverage issues" with respect to covering DM, Ltd. for the MMI and Mandolas' claims against DM, Ltd. in the Travis County Indemnity Suit (see footnote 6).

12.     PIIC is also incorrect in its statement and characterization that "…*MMI essentially seeks to recover from a co-defendant… an amount "paid" in connection with the same promise…*". As stated, MMI seeks in this case to recover from PIIC the cost of defense and indemnification that PIIC owed to and should have paid to DM, Ltd. in conjunction with DM, Ltd.'s defense of the Mandolas' claims against DM, Ltd. in the Travis County Indemnity Suit – that claim and that "amount" was and is a materially different claim than the claim that

---

[5] *State Farm v. Gandy*, 925 S.W.2d 696 (Tex. 1996)

[6] See PIIC exh. 6.

[7] The "coverage issue" that PIIC for which sought declaratory judgment in the Travis County Indemnity Suit (PIIC proposed fact no. 15) was the determination that MMI and the Mandolas were not covered under the PIIC Policies for Bound's Claims in the Bound's Lawsuit (see PIIC Second Amended Petition – PIIC exh. 8, document 68-5 p. 7 of 36; see also Miller letter 6/24/10 – PIIC exh. 6, document 68-5 p. 12 of 28)

DM, Ltd. presented to PIIC for defense of Bound's Claims against DM, Ltd. in the Bound's Lawsuit.

13.     There is also no merit to PIIC's argument that the DM, Ltd. to MMI Assignment is invalid because DM, Ltd. did not notify PIIC or obtain PIIC's consent which PIIC argues was and is required by PIIC Policy Part 6 section X (quoted hereinafter).  Like other contract rights, the right to insurance proceeds can be assigned, giving the assignee the right to recover under the policy.  *McAllen State Bank v. Texas Bank & Trust Co.*, 433 S.W.2d 167, 169 (Tex. 1968); *Zidell v. John Hancock Mut. Life Ins. Co.*, 539 S.W.2d 162, 165 (Tex.Civ.App. – 1976, writ ref'd n.r.e.).  The parties can, however, restrict the insured's right to assign claims against the insurer **IF** they express that agreement and restriction in plain and unambiguous language.[8]  Generally, a contract of insurance is subject to the same rules of construction as other contracts.  *National Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991).  If the insurance contract is worded so that it can be given a certain definite meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law.  *GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d 252, 255-56 (Tex.App.-Houston [1st Dist.] 1991, writ denied).  Moreover, where there is no ambiguity, it is the court's duty to give words their plain meaning.  *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

14.     The PIIC Policy provision that PIIC relies upon provides as follows:

"*Assignment of interest in this Policy shall not bind the underwriter until the underwriter's consent is endorsed hereon*" (PIIC Policy Part 6 section X – PIIC exh. 1, document 68-4 p. 17 of 19).

---

[8] See *e.g. Texas Farmers v. Gerdes*, 880 S.W.2d 215 holding that the language "*Your rights and duties under this policy may not be assigned without our written consent*" was not ambiguous and plainly meant that the insured could not assign the insured's insurance benefits.

DM, Ltd. assignment of its claims and causes of action for breach of contract against PIIC is not an assignment of any "interest" in the PIIC Policy.  In addition, the DM, Ltd. to MMI Assignment did not and does not purport to "bind" PIIC to anything or any interest.  The language is too unclear and inspecific to be enforceable, but it clearly does <u>not</u> say that DM, Ltd. cannot assign legal claims it has against PIIC to a third party.  Moreover, unless the language is clear and explicit under the rules of construction the language must be construed against PIIC and in favor of its insured (see authorities and citations at pp. 11-13 herein).

15.     The Cedyco case that PIIC cites and relies upon does not hold – or even address – the validity of an insured's assignment of legal claims against its insurer.  In Cedyco, the court held that language in auction documents that the winning bidder's rights to an oil and gas lease were "*subject to* (the lessor's) *consent to assign*" was a valid condition precedent because the language expressly stated that the auction sale was "*subject to* (the lessor's consent)".

**II.  PIIC Argument No. 2:  The 10/31/10 Policy Release and Settlement Agreement between DM, Ltd. and PIIC released all claims including the claims which DM, Ltd. subsequently assigned to  MMI and for which MMI now sues PIIC in this suit.**

16.     On October 31, 2010, PIIC and DM, Ltd. entered into the Policy Release and Settlement Agreement (the "DM, Ltd. Release" – PIIC Sealed Exh. 2; PIIC Fact No. 16) which released DM, Ltd.'s claims against PIIC in conjunction with Bounds' claims in the Bound's Lawsuit.  PIIC argues that MMI's claims in this suit are barred by release based on the DM, Ltd. Release.  The DM, Ltd. Release, in relevant part, provides as follows:

> *"**Disputed Claim**" refers to **claims** which DUCHMANDOLA has asserted or could assert **arising out of coverage decisions made by Philadelphia with regard to the claims of Katherine Bounds against DUCHMANDOLA** and includes, but is not limited to, DUCHMANDOLA's breach of contract claims arising out of the Policies, including but not limited to any contractual or equitable subrogation rights asserted by or on behalf of DUCHMANDOLA; all claims for violations of the Texas Insurance Code of any kind; all claims for violations of the Texas Deceptive Practices Act of any kind, including those under Lamar Homes; all common law bad faith claims*

*and those arising out of any duty of good faith and fair dealing; and any contractual claims for attorneys' fees and expenses provided in defense of DUCHMANDOLA by the law firm of Ebe & Associates, and/or any other attorney(s) retained by DUCHMANDOLA for the Bounds Lawsuit...*

. . .

*UPON EXECUTION OF THIS AGREEMENT AND PAYMENT OF THE CONSIDERATION SET FORTH IN SECTION 2, **DUCHMANDOLA FULLY RELEASES AND FOREVER DISCHARGES WITH PREJUDICE PHILADELPHIA FROM ANY AND ALL CLAIMS**, ACTIONS, CAUSES OF ACTION, APPEALS, SUITS, RIGHTS, OBLIGATIONS, DAMAGES, LOSSES, DEFENSE COSTS, ATTORNEY'S FEES, CHARGES, DEBTS, LIABILITIES, AND DEMANDS WHATSOEVER, WHETHER FORESEEN OR UNFORESEEN, KNOWN OR UNKNOWN, DISCLOSED OR UNDISCLOSED, MATURED OR UNMATURED, FIXED OR CONTINGENT, LIQUIDATED OR UNLIQULDATED, IN LAW, EQUITY OR OTHERWISE, **WHICH DUCHMANDOLA HAS OR HAD THAT RELATE IN ANY WAY TO THE DISPUTED CLAIM AND ANY AND ALL PRIOR DEALINGS BETWEEN THE PARTIES RELATED TO THE DISPUTED CLAIM** AS OF THE EFFECTIVE DATE OF THIS AGREEMENT, OF ANY TYPE OR CHARACTER, INCLUDING CLAIMS THAT HAVE BEEN ASSERTED OR COULD HAVE BEEN ASSERTED IN A LAWSUIT, EXCEPT FOR THE OBLIGATIONS IMPOSED BY THIS AGREEMENT. DUCHMANDOLA AND PHILADELPHIA UNDERSTAND AND AGREE THAT DUCILMANDOLA'S RELEASE DOES NOT EXTEND TO ANY CLAIM THAT DAMIAN MANDOLA AND/OR HIS SPOUSE, TRINA MANDOLA, HAVE OR ASSERT AGAINST PHILADELPHIA UNDER THE POLICIES, OR ANY OTHER POLICY ISSUED BY PHILADELPHIA.*

17.     The 10/31/10 DM, Ltd. Release clearly released claims that DM, Ltd. had or has against PIIC arising from PIIC's obligation to insure DM, Ltd. against <u>the claims that Bounds prosecuted against DM, Ltd.</u> (referred to herein as the "Bound's Claims" and referred to in the DM, Ltd. Release as the "*Disputed Claim*"). The DM, Ltd. Release did <u>not</u> and does <u>not</u>, however, release DM, Ltd.'s claims against PIIC (now assigned to MMI and the basis of this suit) arising from the Mandolas and <u>MMI's Indemnity claims in the Travis County Indemnity Suit</u> (the "Mandola Indemnity Claims") against DM, Ltd. (and that DM, Ltd. paid 5/20/11 – see footnote 3 at p. 2 herein). In other words, the 10/31/10 DM. Ltd. Release effectuated release of DM, Ltd.'s claims against PIIC related to <u>the</u> (singular) "*Disputed Claim*"; the operative definition of "*Disputed Claim*", however, is the DM, Ltd. claim arising out of coverage decisions

made by PIIC with regard to the <u>Bound's Claims</u> against DM, Ltd. in the Bound's Lawsuit - **not the <u>Mandola</u> Indemnity Claims** against DM, Ltd. in the Travis County Indemnity Suit.

### III. PIIC Argument No. 3:  MMI's claims against PIIC are now barred by the 2/21/11 Policy Release and Settlement Agreement between MMI and PIIC.

18.     On 2/11/11, MMI and PIIC entered into the Policy Release and Settlement Agreement (the "MMI Release") which released MMI's claims against PIIC in conjunction with the Bounds' Claims in the Bounds' Lawsuit.  PIIC argues that MMI's claims in this suit are barred by release based on the MMI Release.  The MMI Release, in relevant part, provides as follows:

> *"**Disputed Claim**" refers to **claims** which MANDOLA has asserted or could assert* *arising out of coverage decisions made by Philadelphia with regard to the claims of* *Katherine Bounds against MANDOLA and includes, but is not limited to:* *MANDOLA' s breach of contract claims arising out of the Policies, including but* *not limited to any contractual or equitable subrogation rights asserted by or on* *behalf of MANDOLA, **regarding the claims of Katherine Bounds**; all claims for* *violations of the Texas Insurance Code of any kind with regard to or based upon the* *coverage decisions made regarding **the claims of Katherine Bounds against Mandola**;* *all claims for violations of the Texas Deceptive Practices Act of any kind, including* *those under Lamar Homes with regard to or based upon the coverage decisions for the* ***claims of Katherine Bounds against Mandola**; all common law bad faith claims* *and/or those arising out of any duty of good faith and fair dealing with regard to or* *based upon the coverage decisions for the **claims of Katherine Bounds against*** ***Mandola**; all claim asserted in the DEC ACTION with regard to or based upon the* *coverage decisions for the **claims of Katherine Bounds against Mandola**; and any* *contractual claims for attorneys' fees and expenses provided in defense of MANDOLA* ***for claims brought by Katherine Bounds** by the law firms of Michael J. Kuper,* *Chamberlain-McHaney, and Brian Bishop, and/or any other attorney(s) retained by* *MANDOLA for the Bounds' Lawsuit and DEC ACTION. **This Release is not intended*** ***to and shall not include or affect the claims asserted by MANDOLA in the proceeding*** ***against DuchMandola, Ltd., which remains pending**.*
>
> *UPON EXECUTION OF THIS AGREEMENT AND PAYMENT OF THE* *CONSIDERATION SET FORTH IN SECTION 2, MANDOLA FULLY RELEASES AND* *FOREVER DISCHARGES WITH PREJUDICE PHILADELPHIA FROM ANY AND ALL* *CLAIMS, ACTIONS, CAUSES OF ACTION, APPEALS, SUITS, RIGHTS, OBLIGATIONS,* *DAMAGES, LOSSES, DEFENSE COSTS, ATTORNEY'S FEES, CHARGES, DEBTS,* *LIABILITIES, AND DEMANDS WHATSOEVER, WHETHER FORESEEN OR* *UNFORESEEN, KNOWN OR UNKNOWN, DISCLOSED OR UNDISCLOSED,*

*MATURED OR UNMATURED, FIXED OR CONTINGENT, LIQUIDATED OR UNLIQUIDATED, IN LAW, EQUITY OR OTHERWISE, **WHICH MANDOLA HAS OR HAD THAT RELATE IN ANY WAY TO THE DISPUTED CLAIM** AND ANY AND ALL PRIOR DEALINGS BETWEEN THE PARTIES **RELATED TO THE DISPUTED CLAIM** AS OF THE EFFECTIVE DATE OF THIS AGREEMENT, OF ANY TYPE OR CHARACTER, INCLUDING CLAIMS THAT HAVE BEEN ASSERTED OR COULD HAVE BEEN ASSERTED IN A LAWSUIT INCLUDING THE DEC ACTION, EXCEPT FOR THE OBLIGATIONS IMPOSED BY THIS AGREEMENT. MANDOLA AND PHILADELPHIA UNDERSTAND AND AGREE THAT MANDOLA'S RELEASE DOES NOT EXTEND TO ANY CLAIM THAT MANDOLA HAS OR ASSERTS AGAINST DUCHMANDOLA, LTD IN THE DEC ACTION OR ANY OTHER PROCEEDING.*

19.     The 2/11/10 MMI/PIIC Release clearly released claims that MMI had or has against PIIC arising from PIIC's obligation to insure MMI (and the Mandolas) against the claims that Bounds prosecuted against MMI/Mandolas.  The Bound's Claims and Lawsuit are referred to in the MMI/PIIC Release as the *"Disputed Claim"*:  *"Disputed Claim* (means) **claims which MANDOLA has asserted or could assert arising out of coverage decisions made by PIIC with regard to the claims of Katherine Bounds against MANDOLA*"*.  The MMI/PIIC Release did not and does not, however, release either: a) **DM, Ltd.'s claims against PIIC** (now assigned to MMI and the basis of this suit in the Travis County Indemnity Suit); or b) **MMI's claims against DM, Ltd.** in the Travis County Indemnity Suit.  In other words, the MMI/PIIC Release effectuated release of **MMI's** claims against **PIIC** related to only the (singular) *"Disputed Claim";* the operative definition of *"Disputed Claim"*, however, is the MMI/Mandola claim arising out of coverage decisions made by PIIC with regard to the **Bound's Claims** against PIIC - **not the Mandola** Indemnity Claims against DM, Ltd. or DM, Ltd.'s claims against PIIC based on the Travis County Indemnity Suit.

20.     PIIC also misapplies the "one satisfaction rule".  Neither DM, Ltd. nor MMI have been – or seek to be – *"compensated twice for the same injury"*.  The $70,000 that PIIC paid to

DM, Ltd. in conjunction with the 10/31/10 DM, Ltd./PIIC settlement[9] compensated DM, Ltd. for

its defense costs incurred in defending against the Bound's Lawsuit against DM, Ltd. - Cause

No. D-1-GN-08-004114 - referred to and accurately described in the 2/23/11 Settlement

Agreement as the *"Disputed Claim"*.  In contrast, the claims that DM, Ltd. assigned to MMI in

conjunction with the 4/20/11 Assignment and for which MMI now sues PIIC in this case are the

monies that PIIC should have paid to DM, Ltd. in conjunction with DM, Ltd.'s defense of the

Mandolas' claims against DM, Ltd. in the Travis County Indemnity Suit (which did not resolve

until 5/9/11 - seven months <u>after</u> the 10/31/10 DM, Ltd./PIIC settlement).

21.     This Court must determine MMI's liability claims against PIIC in this suit

because PIIC's liability is based on facts applied to written contract language that precludes

PIIC's defensive theories in this case.  According to the Texas Supreme Court: *"if the written*

*instrument is so worded that it can be given a legal meaning or interpretation, then it is not*

*ambiguous and the court will construe the contract as a matter of law"*.  *Coker v. Coker*, 650

S.W.2d 391, 393 (Tex. 1983).  The determination of whether a contract is clear or ambiguous is a

preliminary question of law. *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 781 (Tex. 2006)

(orig. proceeding).  *SAS Institute, Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex.2005).

22.     Lack of clarity does not create an ambiguity.  *Universal Health Servs.,* 121

S.W.3d 742, 746 (Tex. 2003); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994).

Further, a contract is not ambiguous simply because the parties advance conflicting

interpretations. *Columbia Gas Transmission Corp.,* 940 S.W.2d 587, 589 (Tex. 1996); *Forbau,*

Id. at 134.  A contract is ambiguous only if it is subject to two or more reasonable interpretations

---

[9] See 10/31/10 DM, Ltd. Release 2.2 (PIIC Sealed Exh. 2/Docket No. 62; PIIC Fact No. 16).  PIIC also paid $28,500
directly to Bounds in settlement of Bound's Claims against DM, Ltd. – Id. at 2.1.

after applying the pertinent rules of construction. *Universal Health Servs.,* Id. at 746; *Columbia Gas Transmission Corp.,* Id. at 589.

23.     Where there is an ambiguity or uncertainty as to the meaning of a contract between an insurer and its insured, the court must accept the construction which is favorable to the insured (which in this case is MMI as assignee of the *Insured* DM, Ltd.). *National Security Life & Cas. Co. v. Davis*, 257 S.W.2d 943 (Tex. 1953); *Trahan v. Southland Life Ins. Co.*, 155 Tex. 548, (Tex. 1956).   When the language of a policy is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured.  *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987).  Where the question of interpretation involves an exception or limitation on the insurer's liability under the policy, an even more stringent construction is required.  *Id.*

24.     PIIC's argument is that the definition of "*Disputed Claims*" in either the DM, Ltd. Release or the MMI Release goes beyond the "*claims arising out of coverage decisions made by PIIC with regard to the claims of Katherine Bounds against DM, Ltd.*" vis-à-vis the "*…and includes, but is not limited to, DM, Ltd.'s breach of contract claims arising out of the Policies…*" language that follows after Bound's Claims language.  That expansive construction, however, is precluded by the rules of construction.  First, specific language (*i.e.* the claims specifically released are the claims arising from the Bound's Claim) controls over any general language. *Maxus Exploration v. Moran Bros., Inc.,* 773 S.W.2d 358, 363 (Tex.App.-Dallas 1989), *aff'd,* 817 S.W.2d 50 (Tex.1991) (holding that a general definition describing the nature of a transmission service cannot be used to supplement or modify the expressed and precise definition of the "*Net Energy*" obligation); *O'Connor v. O'Connor,* 694 S.W.2d 152, 155 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.).   Second, release language must be strictly

constructed to limit – not expand – the release.  See *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991); *Boales v. Brighton Builders, Inc.,* 29 S.W.3d 159, 167 (Tex.App.- Houston [14th Dist.] 2000, pet. denied) (holding that general, categorical releases should be narrowly construed).   Third, the primary and first (and only specific) language describing the claims released (*i.e.* DM, Ltd.'s claims based on the Bound's Claims) is obviously intended to describe the specific claims released; the secondary *"and includes"* language must, therefore, be construed to be "subset" of – and contained within - the Bound's Claims described in the primary and specific language. According to the Texas Supreme Court in *Stanford v. Butler*, 181 S.W.2d 269 (Tex. 1944):

> *"…Under the rule of ejusdem generis, where specific and particular enumerations of persons or things… are followed by general words, the general towards are not to be construed in their widest meaning or extent, but are to be treated as limited and applying only to persons or things of the same kind or class as those expressly mentioned…*  Id. at p. 272.

Finally, the use of the singular term *"Disputed Claim"*, the specific reference to only the Bound's claims against DM, Ltd., and the omission of any reference to MMI/the Mandolas or to MMI/the Mandolas' Indemnity Claims against DM, Ltd., or to the Travis County Indemnity Suit (the Travis County Indemnity Suit was pending October 2010)[10] must be construed to have been intentional, purposeful, and meaningful.  *Birnbaum v. Swepi, LP,* 48 S.W.3d 254, at 257 (Tex. App. – San Antonio 2001).

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court deny Defendant's Motion to Dismiss.  Plaintiff prays for other and further relief.

---

[10] PIIC Fact No. 18.

Respectfully submitted,

Brian W. Bishop
State Bar No. 02346300
Attorney at Law
115 Wild Basin Road, Suite 106
Austin, Texas 78746
(512) 327-5121
(512) 327-5122

By: _____
Brian W. Bishop

Michael Jay Kuper
State Bar No. 11765000
Attorney at Law
2800 Post Oak Blvd., 61st Floor
Houston, Texas  77056-5705
(713) 892-4888
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on the __2__ day of March, 2012, I electronically filed the foregoing document with the United States District Court for the Western District of Texas through its Case Management/Electronic Case Files system and thereby upon all parties of record.

_____
Brian W. Bishop