FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS 2012 JUL 10  PM 3: 40
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

| | | |
|---|---|---|
| MANDOLA MANAGEMENT, INC., | § | |
| PLAINTIFF/ | § | |
| COUNTER-DEFENDANT, | § | |
| | § | |
| V. | § | CIVIL NO. A-11-CV-478-LY |
| | § | |
| PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY, | § | |
| DEFENDANT/ | § | |
| COUNTER-PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | |
| DAMIAN MANDOLA, TRINA | § | |
| MANDOLA, AND TRATTORIA LISINA, | § | |
| L.L.C., | § | |
| COUNTER-DEFENDANTS. | § | |

## ORDER ON MOTION TO DISMISS
## AND MOTIONS FOR SUMMARY JUDGMENT

Before the court in the above-styled cause of action are the following dispositive motions:

(1) Defendant Philadelphia Indemnity Insurance Company's Motion to Dismiss Plaintiff's Second

Amended Complaint Pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed

February 27, 2012 (Clerk's Doc. No. 68);[1] (2) Plaintiff Mandola Management, Inc.'s Motion for

Partial Summary Judgment, filed March 9, 2012 (Clerk's Doc. No. 74);[2] and (3) Counter-Defendants

Damian Mandola and Trina Mandola's Motion for Summary Judgment, filed January 6, 2012

---

[1] Plaintiff Mandola Management, Inc. filed a response to the motion on March 7, 2012, to which Philadelphia Indemnity Insurance Company (Philadelphia Indemnity) replied on March 19, 2012.

[2] Philadelphia Indemnity filed a response to the motion on March 20, 2012.

(Clerk's Doc. No. 51).[3]  Having considered the motions, responses, and replies, the proof, the case file, and the applicable law, the court will grant Philadelphia Indemnity's motion to dismiss, dismiss Mandola Management Inc.'s motion for partial summary judgment, and grant in part and deny in part Damian and Trina Mandola's motion for summary judgment.

## I. BACKGROUND

This suit is an insurance-coverage dispute over certain damages and defense costs incurred in prior litigation.  A brief recitation of the parties and the prior litigation is, therefore, necessary.

A.    *The Bounds Suit*

In April 2005, Damian and Trina Mandola (the Mandolas) and Stan and Lisa Duchman (the Duchmans) entered into a limited partnership known as DuchMandola, Ltd. (DuchMandola). DuchMandola owned and operated a winery and a restaurant, Trattoria Lisina, in Driftwood, Texas.[4] Damian Mandola served as president of DuchMandola GP, Inc., the general partner of DuchMandola that managed the operations of the limited partnership, the winery, and Trattoria Lisina.

In November 2005, DuchMandola entered into an employee-leasing agreement with Mandola Management Inc., an employee/staff leasing company owned by the Mandolas (Mandola Management).  Pursuant to the leasing agreement, Mandola Management would lease employees to DuchMandola to work at the winery and restaurant, and DuchMandola would indemnify Mandola Management from and against any claims brought against Mandola Management by a leased

---

[3]  Counter-Plaintiff Philadelphia Indemnity filed a response on January 17, 2012, to which the Mandolas replied on January 24, 2012, and requested attorney's fees, and to which Philadelphia Indemnity filed a sur-reply on January 27, 2012.

[4]  The Mandolas withdrew from the limited partnership in November 2009, leaving the Duchmans as the only limited partners.  DuchMandola is now known as Duchman, Ltd.

2

employee.  From November 2008 to August 2010, Katherine Bounds, an employee leased to Trattoria Lisina, prosecuted a lawsuit against Mandola Management, the Mandolas, the Duchmans, DuchMandola, DuchMandola GP, Inc., and Trattoria Lisina.  *See Bounds v. Mandola Mgmt., Inc., et al.*, No. D-1-GN-08-004114 (261st Dist. Ct., Travis County, Tex. Aug. 16, 2010) (the Bounds suit).  The Bounds suit settled in mediation on June 28, 2010, and the district court dismissed the case on August 16, 2010.  Philadelphia Indemnity, DuchMandola's employee-practice liability insurer, participated in the mediation and settlement.

B.    *The Travis County Suit*

On July 22, 2010, Mandola Management, the Mandolas, and Trattoria Lisina sued DuchMandola and Philadelphia Indemnity for indemnification for the losses and expenses they incurred defending the Bounds lawsuit.  *See Mandola Mgmt., Inc., et al. v. DuchMandola, Ltd.*, No. C-1-CV-10-006956 (Co. Ct. at Law No. 2, Travis County, Tex. May 9, 2011) (the Travis County suit).[5]  Mandola Management, the Mandolas, and Trattoria Lisina settled their claims against Philadelphia Indemnity on February 11, 2011 (February 11, 2011 Release), and their claims against DuchMandola on April 20, 2011 (April 20, 2011 Release).  According to the April 20, 2011 Release, DuchMandola agreed to the entry of judgment in favor of Mandola Management, the Mandolas, and Trattoria Lisina in the amount of $374,538.  The settlement also included a provision in which DuchMandola agreed to assign to Mandola Management, the Mandolas, and Trattoria Lisina "any claim, if any, presently held against Philadelphia Indemnity in favor of [DuchMandola] based on [Mandola Management's] indemnity claim against [DuchMandola] in the Travis County [suit]."  The

_____

[5] While the Travis County suit was pending, Philadelphia Indemnity entered into a settlement agreement with DuchMandola (October 31, 2010 Release) with respect to any claim for reimbursement for Philadelphia's payment on behalf of DuchMandola in the Bounds Suit settlement.

Travis County court entered final judgment in favor of Mandola Management, the Mandolas, and Trattoria Lisina and against DuchMandola in the amount of $374,538 on May 9, 2011. DuchMandola paid the judgment on May 20, 2011, and Mandola Management, the Mandolas, and Trattoria Lisina signed a release of judgment lien on June 7, 2011.

C.      *The Instant Suit*

The day DuchMandola satisfied the judgment, Mandola Management initiated this cause of action against Philadelphia Indemnity in Travis County Court at Law.  Mandola Management, proceeding as assignee of DuchMandola's claims against Philadelphia Indemnity, alleges that Philadelphia Indemnity breached its contract with DuchMandola by failing to reimburse DuchMandola's damages and defense costs arising out of the Travis County suit.  Mandola Management seeks to recover, on DuchMandola's behalf, reimbursement for the $347,538 that DuchMandola paid Mandola Management in satisfaction of the judgment and $30,983 in defense costs.[6]  Philadelphia Indemnity removed the suit to this court on June 9, 2011, and counterclaimed against Mandola Management, seeking a declaratory judgment that it has no duty to indemnify Mandola Management or Mandola Management as assignee of DuchMandola.

Philadelphia Indemnity moved to join the Mandolas and Trattoria Lisina as necessary and indispensable parties to its counterclaim.  The court granted the motion on November 28, 2011. Mandola Management filed its Second Amended Complaint on December 16, 2011, and Philadelphia Indemnity filed its Second Amended Counterclaim on January 31, 2012, which included an additional counterclaim against Mandola Management, the Mandolas, and Trattoria

---

[6]  Philadelphia Indemnity stipulates that attorney's fees in the amount of $30,983 were reasonable and necessary.

Lisina for breach of the October 31, 2010 and February 11, 2011 Releases and the confidentiality provision contained in the October 31, 2010 Release.

Philadelphia Indemnity now seeks dismissal of Mandola Management's Second Amended Complaint, arguing that (1) the assignment of DuchMandola's claims against Philadelphia Indemnity is invalid under Texas law and, therefore, void; (2) even if the assignment were valid, Mandola Management has not suffered an injury for which it can recover; and (3) all claims asserted by Mandola Management were released by the October 31, 2010 and February 11, 2011 Releases. Mandola Management seeks partial summary judgment in the form of a declaratory judgment that the assignment of DuchMandola's claims was valid and that the Philadelphia Indemnity policies issued to DuchMandola cover Mandola Management's claims. The Mandolas' motion for summary judgment seeks dismissal of all of Philadelphia Indemnity's counterclaims, arguing that the Mandolas have not asserted that Philadelphia Indemnity has a duty to indemnify Mandola Management and that the Mandoals have not sued Philadelphia Indemnity, and, therefore, have not breached the October 31, 2010 or February 11, 2011 Releases by Mandola Management's filing of this lawsuit.[7]

## II.  ANALYSIS

A.     *Philadelphia Indemnity's Motion to Dismiss*

Philadelphia Indemnity moves for dismissal of Mandola Management's Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider

---

[7] The record reflects that Trattoria Lisina was never served with Philadelphia Indemnity's counterclaim and has not made an appearance in this action.

the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must dismiss a cause for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). A motion to dismiss for lack of jurisdiction under 12(b)(1) may be decided on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). The party asserting this court's jurisdiction maintains the burden of proving that jurisdiction does exist. *Ramming*, 281 F.3d at 161.

Philadelphia Indemnity's jurisdictional argument is that Mandola Management lacks standing to prosecute this suit because neither Mandola Management nor DuchMandola has suffered an injury in fact as a result of Philadelphia Indemnity's actions. In order to demonstrate standing as required by Article III, section 2 of the United States Constitution, a plaintiff must show: (1) that it has suffered an "injury in fact" that is (2) fairly traceable to the challenged action of the defendant and (3) the likelihood that the injury can be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An "injury in fact" must be both concrete and particularized and must be either actual or imminent. *Friends of the Earth*, 528 U.S. at 180–81. Because Mandola Management seeks to recover for an injury allegedly suffered by DuchMandola, the viability of Mandola Management's lawsuit depends both on the validity of the assignment of DuchMandola's claims against Philadelphia Indemnity to Mandola Management and the existence of an injury in fact

6

suffered by DuchMandola. The court concludes that Mandola Management has failed to prove either.

### i.        Validity of the Assignment of DuchMandola's Claims

Philadelphia Indemnity argues that the purported assignment of DuchMandola's claims against Philadelphia Indemnity to Mandola Management is invalid under Texas law for two reasons: the assignment violates public policy, and DuchMandola did not obtain Philadelphia Indemnity's consent to the assignment, as required under the terms of the insurance policy issued to DuchMandola.[8] Under Texas law, a defendant's assignment of its claims against its insurer to a plaintiff is invalid as violative of public policy if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996). The parties dispute whether the *Gandy* factors have been met here, because Philadelphia Indemnity never tendered a defense to DuchMandola of the claims asserted by Mandola Management in the Travis County suit. The *Gandy* court did not address whether an assignment is also invalid if one or more of these elements is lacking. *Id.* The court need not rule whether the assignment violates public policy under Texas law, however, because the court is persuaded that the plain and unambiguous language of the policy issued to DuchMandola by Philadelphia Indemnity required Philadelphia Indemnity's consent for any assignment of insurance claims to be enforceable.

---

[8] Where jurisdiction is based on diversity, this court applies the substantive law of the forum state, here Texas. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

The policy at issue contains a provision stating that an "[a]ssignment of interest in this Policy shall not bind the Underwriter until the Underwriter's consent is endorsed hereon." Texas law permits the enforcement of nonassignment clauses in insurance policies. *Conoco, Inc v. Republic Ins. Co.*, 819 F.2d 120, 124 (5th Cir. 1987) (citing *Dallas Cnty. Hosp. Dist. v. Pioneer Cas. Co.*, 402 S.W.2d 287, 288 (Tex. Civ. App.—Fort Worth 1966, writ ref'd n.r.e.)). No party in this case alleges that Philadelphia Indemnity consented to DuchMandola's assignment to Mandola Management. Rather, Mandola Management argues that the contractual language requiring Philadelphia Indemnity's consent is too unclear and unspecific to be enforceable.

A contract of insurance is subject to the same rules of construction as other contracts. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991). "If the insurance contract is worded so that it can be given a certain definite meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law." *Tex. Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 218–19 (Tex. Civ. App.—Fort Worth 1994, no writ) (internal citation omitted). "Moreover, where there is no ambiguity, it is the court's duty to give words their plain meaning." *Id.* at 219 (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)).

Mandola Management's only argument with respect to the ambiguity of the nonassignment clause at issue here concerns the use of the word "interest." Mandola Management argues that the prohibition of assignment without consent of an "interest" in the Philadelphia Indemnity policy does not prohibit the assignment of its "claims" and "cause of action" for breach of contract. This argument is contrary to Texas law. *See Conoco, Inc.*, 819 F.2d at 124 (rejecting argument attempting to distinguish assignment of "proceeds" of policy, as opposed to prohibited assignment of "claim or demand," as "specious"); *Tex. Pac. Indem. Co. v. Atl. Richfield Co.*, 846 S.W.2d 580, 584 (Tex. Civ.

App.—Houston [14 Dist.] 1993, writ denied) (rejecting argument that nonassignment clause only prohibited assignment of "interests" in the policy as opposed to "fully matured claims based upon the Policy"). Interest may be defined as a "legal share in something; all or part of a legal or equitable claim to or right in property." BLACK'S LAW DICTIONARY 885 (9th ed. 2009). The court is unpersuaded that the use of the word "interest" in the nonassignment clause exempts the legal claims Mandola Management asserts here. Accordingly, the court holds that the attempted assignment of "any claim, if any, presently held against Philadelphia Indemnity in favor of [DuchMandola]" constituted a transfer of an interest in the policy, falling within the policy's nonassignment clause.

Additionally, the court further holds that Philadelphia Indemnity's consent was a condition precedent to the enforcement of any assignment of interest in the policy. *See Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007). "A condition precedent is an act or event that must take place before performance of a contractual obligation is due." *Id.* "While Texas does not generally favor reading conditions precedent into contracts, . . . the inclusion of words such as 'if,' 'provided,' 'on condition that,' or some similar phrase of conditional language indicate that the parties intended there to be a condition precedent." *Id.* (internal citation and quotation omitted). Here, the nonassignment clause states that an assignment shall not bind the underwriter *until* the underwriter's consent is given. Thus, the language of the nonassignment clauses expressly indicated that an assignment was conditioned on Philadelphia Indemnity's consent. *See id.* at 489. Mandola Management has failed to establish the validity of the underlying assignment on which it bases its standing to prosecute this suit.

9

### ii.     Injury to DuchMandola

The court further holds that, even if the assignment were valid, DuchMandola has not suffered an injury in fact by Philadelphia Indemnity's failure to reimburse DuchMandola for the costs incurred in defending the Travis County suit, because DuchMandola completely released Philadelphia Indemnity from any and all claims arising out of the Bounds suit. The October 31, 2010 Release states that its purpose is to "fully and finally settle and compromise all claims, matters, disputes and potential causes of action" with respect to the Bounds suit and DuchMandola's "claim for defense costs and indemnity" under the Philadelphia Indemnity policies. Mandola Management's argument that the October 31, 2010 Release released only DuchMandola's claims against Philadelphia Indemnity arising from the Bounds suit, not DuchMandola's claim against Philadelphia Indemnity arising from the Travis County suit, is unavailing.

A release must be construed like any other contract, in light of the facts and circumstances surrounding the release's execution. *See Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 221 (Tex. 1991). If a release is capable of a certain or definite legal meaning or interpretation, then effect must be given to the parties' intentions as expressed within the language of the release. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A general, categorical release clause must be construed narrowly, and any claims not clearly within the subject matter of a release are not discharged, even if such claims existed at the time the release was executed. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991) (settlement agreement releasing all claims and causes of action "attributable to" a specified loan transaction did not release subsequent tort claims arising out of separate security agreement between the parties); *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 167–68 (Tex. Civ. App.—Houston [14th Dist] 2000, pet. denied) (release from all

10

claims concerning builder's misrepresentations regarding adjacent easement did not release unrelated claims of misrepresentation against builders' sale representative).  In other words, the releasing instrument must "mention" the claim to be released.  *Id.*

The October 31, 2010 Release fully releases and forever discharges with prejudice Philadelphia Indemnity from:

> any and all claims, actions, causes of action, appeals, suits, rights, obligations, damages, losses, defense costs, attorney's fees, charges, debts, liabilities, and demands whatsoever, whether foreseen or unforeseen, known or unknown, disclosed or undisclosed, matured or unmatured, fixed or contingent, liquidated or unliquidated, in law, equity or otherwise, which [DuchMandola] has or had that related in any way to the "disputed claim" and any and all prior dealings between the parties related to the disputed claim as of the effective date of this agreement, of any type or character, including claims that have been asserted or could have been asserted in a lawsuit, except for the obligations imposed by this agreement.

The October 31, 2010 Release defines "disputed claim" as claims which DuchMandola "has asserted or could assert arising out of coverage decisions made by [Philadelphia Indemnity] with regard to the claims of Katherine Bounds against [DuchMandola] and includes, but is not limited to, [DuchMandola's] breach of contract claims arising out of the Policies . . . ."

The court agrees with Philadelphia Indemnity that the October 31, 2010 Release evidences an unambiguous and clear intent on the part of Philadelphia Indemnity to buy complete peace from all existing and potential claims and causes of action, relating to, arising from or connected to the Bounds suit.  That is precisely what the clause states, that all claims or causes of action, "which [DuchMandola] has or had that related in any way to the 'disputed claim'" be released.  It defies all reason to suggest that the Travis County suit and any claims or causes of action arising from it are unrelated to the Bounds suit.  The damages Mandola Management seeks to recover in this action

represent "Mandola Management and the Mandolas' defense costs and damages in the Bounds Suit." The Travis County suit is related in every way to the Bounds suit; it would not exist otherwise. Finally, the court rejects Mandola Management's arguments that the doctrine of *ejusdem generis*[9] limits the category of claims released to the definition of "disputed claim" contained in the October 30, 2010 Release. "[T]he very purpose of . . . a broadly worded release is to avoid the risk of encountering such interpretative principles as *ejusdem generis* by enumerating claims to be released at least where the parties were buying complete peace," as here. *Shelton v. Exxon Corp.*, 921 F.2d 595, 602 (5th Cir. 1991). Accordingly, the court concludes that the October 30, 2010 Release released all claims related to the Bounds suit, and, thus, DuchMandola suffered no injury in fact by not receiving reimbursement from Philadelphia Indemnity for its losses in the Travis County suit.

### iii.    Injury to Mandola Management

Having concluded that Mandola Management lacks standing as assignee of DuchMandola to prosecute this action, the court also considers whether Mandola Management has some basis for standing as a plaintiff on it own behalf. By the February 11, 2011 Release, Mandola Management, the Mandolas, and Trattoria Lisina released all claims they "ha[ve] asserted or could assert arising out of coverage decision made by [Philadelphia Indemnity] with regard to the claims of Katherine Bounds . . . ." Moreover, Mandola Management already received indemnification from DuchMandola for its defense costs arising out of the Bounds suit in the amount of $374,538. Thus, Mandola Management has suffered no injury in fact by DuchMandola not receiving reimbursement

---

[9]    The doctrine of *ejusdem generis* provides that "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *United States v. Miller*, 665 F.3d 114, 135 (5th Cir. 2011) (internal citation and quotation omitted).

from Philadelphia Indemnity for that amount.  Accordingly, the court will grant Philadelphia Indemnity's motion to dismiss.  In light of the court's dismissal of Mandola Management's complaint against Philadelphia Indemnity, the court will also dismiss Mandola Management's motion for partial summary judgment.

B.      *The Mandolas' Motion for Summary Judgment*

By its Second Amended Counterclaim, Philadelphia Indemnity seeks a declaratory judgment against Mandola Management, the Mandolas, and Trattoria Lisina that it has no duty to indemnify Mandola Management, Mandola Management as assignee of DuchMandola, the Mandolas, or Trattoria Lisina.  Philadelphia Indemnity also sues Mandola Management, the Mandolas, and Trattoria Lisina for breach of contract and breach of the confidentiality agreement contained in the October 31, 2010 Release.  The Mandolas seek summary judgment dismissing both of Philadelphia Indemnity's counterclaims, arguing that the only party who has sued Philadelphia Indemnity or has asserted any interest with respect to DuchMandola's claims against Philadelphia Indemnity is Mandola Management.

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F. 3d 455, 458 (5th Cir. 1998).  If the moving party carries its burden of showing that there is no genuine dispute as to any material fact, the burden shifts to the nonmovant to introduce specific facts or produce evidence that shows the existence of a genuine dispute regarding a material fact that prevents the grant of summary judgment in the movant's favor.  FED.

R. CIV. P. 56(e); *see also Celotex*, 477 U.S. at 322–23.   A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   This court views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor. *Allen v. McWane, Inc.*, 593 F.3d 449, 452 (5th Cir. 2010).

### i.   Declaratory Judgment

The record reflects that the Mandolas were defendants in the Bounds suit and plaintiffs in the Travis County suit.   The Mandolas were also parties to the February 11, 2011 Release, whereby they released all claims against Philadelphia Indemnity related to the Bounds suit, and the April 20, 2011 Release, which memorialized the settlement in the Travis County suit and by which DuchMandola purported to assign Mandola Management, the Mandolas, and Trattoria Lisina its claims against Philadelphia Indemnity.   The Mandolas argue, however, that they are not proper parties to Philadelphia Indemnity's declaratory-judgment action because they irrevocably assigned to Mandola Management whatever claims or causes of action they could have under the April 20, 2011 Release on November 14, 2011.

The Mandolas direct the court to this assignment, which they represent is attached to their motion for summary judgment.   The court is unable to locate any such document in the record.   The only exhibit attached to the Mandolas' motion is a copy of the April 20, 2011 Release.   Without any competent summary-judgment proof of the assignment of the Mandolas' claims to Mandola Management, the Mandolas have not carried their burden to demonstrate their entitlement to summary judgment on Philadelphia Indemnity's declaratory-judgment action.   Because the April 20, 2011 Release assigned DuchMandola's claims to the Mandolas and Trattoria Lisina, as well as

14

Mandola Management, the Mandolas are not entitled to dismissal of Philadelphia Indemnity's declaratory-judgment action, by which it seeks a declaration that it has not duty to indemnify DuchMandola or its assignees.

### ii.     Breach of Contract

Philadelphia Indemnity's counterclaim alleges that Mandola Management, the Mandolas, and Trattoria Lisina breached the confidentiality provision contained in the October 31, 2010 Release and the release provision of the February 11, 2011 Release when Mandola Management initiated the instant action against Philadelphia Indemnity on behalf of DuchMandola. The Mandolas move for summary judgment, arguing that they did not sue Philadelphia Indemnity and, thus, cannot be liable for breach of either release.

Under Texas law, in order to establish a breach of contract, a party must show "(I) the existence of a contract, (ii) proof of the plaintiff's performance, (iii) evidence of the defendant's breach, and (iv) damages." *Soc'y of Lloyd's v. Turner*, 303 F.3d 325, 332 (5th Cir. 2002). The only contract between the Mandolas and Philadelphia Indemnity is the February 11, 2011 Release.[10] The conduct alleged to have breached this agreement is Mandola Management's filing of suit against Philadelphia Indemnity on behalf of DuchMandola. Philadelphia Indemnity argues that because the Mandolas are "the sole owners and operators" of Mandola Management, their interests are "inextricably intertwined" with the corporation, and thus they can be liable for Mandola Management's breach of contract.

---

[10]   This court today holds that the purported assignment of DuchMandola's claims to Mandola Management, the Mandolas, and Trattoria Lisina is invalid. Accordingly, any argument by Philadelphia Indemnity that the assignment somehow binds the Mandolas to the confidentiality provision contained in the October 31, 2010 Release between Philadelphia Indemnity and DuchMandola is meritless.

These allegations are insufficient as a matter of law to subject the Mandolas to individual liability. "A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations." *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). "Avoidance of personal liability is not only sanctioned by the law; it is an essential reason that entrepreneurs . . . choose to incorporate their businesses." *Id.* Under current law, the only basis for holding a shareholder, owner, or subscriber of the corporation liable with respect to a breach of contract by the corporation is where the individual "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate." "TEX. BUS. ORGS. CODE § 21.223(b). Philadelphia Indemnity's counterclaim makes no such allegations of fraud. Accordingly, they cannot defeat the Mandolas' motion for summary judgment simply by alleging that the Mandolas' interests are "inextricably intertwined with the corporation," and the Mandolas are entitled to summary judgment on Philadelphia Indemnity's counterclaim for breach of contract.

## III. CONCLUSION

Having reviewed the parties' motions, the record, and applicable law, the court finds that Mandola Management lacks standing to sue Philadelphia Indemnity for breach of contract because there was no valid assignment of DuchMandola's claims against Philadelphia Indemnity to Mandola Management. Further, the court finds that neither DuchMandola nor Mandola Management suffered any injury in fact to form the basis of Mandola Management's breach-of-contract claim. Accordingly, the court will dismiss Mandola Management's complaint with prejudice.

16

In light of the dismissal of Mandola Management's complaint, Mandola Management's motion for partial summary judgment is dismissed.

Finally, the court will grant the Mandolas' motion for summary judgment with respect to Philadelphia Indemnity's counterclaim for breach of contract but deny the motion with respect to Philadelphia Indemnity's declaratory-judgment counterclaim.

Philadelphia Indemnity may proceed with its declaratory-judgment claim against Mandola Management and the Mandolas as pleaded in its Second Amended Counterclaim (Clerk's Doc. No. 67) and breach-of-contract claim against Mandola Management.[11]

**IT IS THEREFORE ORDERED** that Defendant Philadelphia Indemnity Insurance Company's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Clerk's Doc. No. 68) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Mandola Management, Inc.'s Second Amended Petition is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff Mandola Management, Inc.'s Motion for Partial Summary Judgment (Clerk's Doc. No. 74) is **DISMISSED**.

**IT IS FINALLY ORDERED** that Counter-Defendants Damian Mandola and Trina Mandola's Motion for Summary Judgment (Clerk's Doc. No. 51) is **GRANTED TO THE FOLLOWING EXTENT**.  The court **HEREBY DISMISSES** Philadelphia Indemnity Insurance

---

[11]   Mandola Management's Motion for Partial Summary Judgment does not address Philadelphia Indemnity's counterclaims.

17

Company's counterclaim for breach of contract against Damian and Trina Mandola. In all other respects, the motion is **DENIED**.

SIGNED this ___10th___ day of July, 2012.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

18